**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VENEZIE SPORTING GOODS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALLIED INSURANCE COMPANY ) <br> OF AMERICA and NATIONWIDE ) <br> INSURANCE COMPANY ) <br> ) <br> Defendants. ) | 2:20-cv-1066 |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Two motions are currently before the Court: (1) Defendants Allied Insurance Company of America's and Nationwide General Insurance Company's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) Plaintiff Venezie Sporting Goods, LLC's Motion to Remand this matter to the Court of Common Pleas of Lawrence County, Pennsylvania. This Court, in employing its discretion under the Declaratory Judgment Act (DJA), declines to exercise subject matter jurisdiction over this case. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion to Remand (ECF No. 8) and further **DENIES WITHOUT PREJUDICE AS MOOT** Defendants' Motion to Dismiss. (ECF No. 4.)

**I.    BACKGROUND**

The COVID-19 global pandemic and resulting government stay-at-home orders have presented significant economic impacts on Pennsylvania institutions, whereby businesses across the Commonwealth have been unable to use their premises and have subsequently sustained income losses. Across both federal and state courts in Pennsylvania, a question has been raised: whether commercial insurance contracts cover or exclude business interruption losses stemming

1

from the COVID-19 pandemic. In resolving these motions, the Court takes the following facts from the Complaint.

Plaintiff Venezie Sporting Goods, LLC, a company located in Lawrence County, Pennsylvania, was forced to close its doors after sustaining losses amid the COVID-19 pandemic and related government shut-down orders. (ECF No. 1-1, at 15 ¶ 27.) For the time period relevant to this lawsuit, Plaintiff was (and remains) covered by two (2) "premier" business owners insurance policies issued by Defendants Allied Insurance of America and Nationwide General Insurance Company.[1] (*Id*. at 11 ¶ 7.) The insurance policies are "all risks" policies providing "coverage for losses, damages and expenses to the insured premises unless specifically excluded" (*Id*. at 12 ¶ 9) and are in effect for an aggregate period starting April 16, 2019 and ending April 16, 2021. (*Id.* at ¶ 8.) Because Plaintiff was "forced to close its business" in the response to the pandemic (*Id.* at 15 ¶ 27), Plaintiff alleges to have "suffered loss of business income and damages" covered by multiple provisions under the policies. (*Id.* at 16 ¶ 31.) Plaintiff made an insurance claim upon Defendants for "recovery of losses, damages and expenses caused by the COVID-19 pandemic and [ ] governmental orders[.]" (*Id*. at ¶¶ 31, 32.) Defendants, however, denied Plaintiff's claim, (*Id*. at 16 ¶ 33), on the basis that (1) Plaintiff's business interruption losses do not fall within the definition of any covered cause of loss, and (2) the policies' virus exclusions block coverage. (ECF No. 12, at 2–3 ¶¶ 2–5.)

Following Defendants' denial of coverage, Plaintiff initially brought this action in the Court of Common Pleas of Lawrence County, seeking a declaration of its rights under the two (2) insurance policies. (ECF No. 1-1.) Specifically, Plaintiff seeks a declaration that the insurance

---

[1] Defendants indicate that Plaintiff incorrectly refers to Nationwide General Insurance Company as "Nationwide Insurance Company" in its Complaint. (ECF No. 12, at 1.) The Court will refer to this Defendant as Nationwide General Insurance Company.

policies at issue cover the business interruption losses Plaintiff sustained as a result of the government shut-down orders issued to mitigate the spread of COVID-19. (*Id*. at 11.) Defendants timely removed this case to this Court (ECF No. 1) and thereafter filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 4.) Plaintiff promptly filed a Motion to Remand this matter to state court, arguing that this Court should decline to exercise its jurisdiction by invoking its discretion to do so under the DJA. (ECF No. 8.) The thrust of Plaintiff's argument is that its "Complaint raises novel insurance coverage issues under Pennsylvania law which are best reserved for the state court to resolve in the first instance." (*Id.* at 5.) In response, Defendants argue that remand is inappropriate because (1) Plaintiff's Complaint seeks more than declaratory relief, so principles of declination of jurisdiction are not applicable here, and (2) even if the Court concludes that Plaintiff does not seek more than declaratory relief, the *Reifer* factors counsel in favor of the Court exercising jurisdiction under the DJA. (ECF No. 12.) The Court first considers Plaintiff's Motion to Remand, as the Court's conclusion regarding that Motion will impact whether the Court must then consider the merits of Defendants' Motion to Dismiss.

## II.     STANDARD OF REVIEW

The DJA provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). This jurisdiction "is discretionary, rather than compulsory[.]" *Allstate Fire & Cas. Ins. Co. v. Archer*, No. 17-331, 2018 WL 2538859, at * 2 (W.D. Pa. June 4, 2018) (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014)). A motion to remand relying on the DJA is appropriately analyzed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), whereby "a court must grant a motion to dismiss if it lacks subject matter to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Thus, taking "the

allegations of the complaint as true," *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016), the Court must determine whether the factors laid out by the Third Circuit in *Reifer* and further applied in *Kelly* point toward exercising subject matter jurisdiction or to remanding the matter to state court. *Reifer*, 751 F.3d at 134; *see Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 283 (3d Cir. 2017).

### III.     DISCUSSION

In *Reifer*, the Third Circuit held that although a case may have originally been "brought in state court under Pennsylvania law, the question of whether to exercise federal jurisdiction to adjudicate the controversy [becomes] a procedural issue under federal law." 751 F.3d at 134 n.4. In *Reifer*, the Third Circuit further guided lower courts to consider eight (8) factors "when exercising DJA discretion." *Id*. at 140. These factors are:

(1) The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) The convenience of the parties';

(3) The public interest in settlement of the uncertainty of the obligation;

(4) The availability and relative convenience of other remedies;

(5) A general policy of restraint when the same issues are pending in state court;

(6) Avoidance of duplicative litigation;

(7) Prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize the suit in federal courts as falling within the scope of a policy limitation.

*Reifer*, 751 F.3d at 146; *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000). In insurance coverage cases, "the fifth, sixth, and eighth factors are particularly relevant." *Ewart v. State Farm Mut. Auto. Ins. Co.*, 257 F. Supp. 3d 722, 725 (E.D. Pa. 2017) (citing *Summy*, 234 F.3d at 134). The Third Circuit further cautions that if "state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction." *Reifer*, 751 F.3d at 146 (quoting *Summy*, 234 F.3d at 135–36). Moreover, "[t]he fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" *Id.* (quoting *Summy*, 234 F.3d at 136). In sum, where there are unsettled questions of state law, "it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment[.]" *Summy*, 234 F.3d at 135.

The Court first addresses Defendants' argument that the Court need not engage in a discretionary jurisdiction analysis and then apply the *Reifer* factors because Plaintiff's Complaint seeks more than a declaratory judgment. (ECF No. 12, at 15–16.) Defendants assert that Plaintiff's Complaint seeks legal relief that is merely couched in the language of declaratory relief. (*Id.*) To support that proposition, Defendants primarily rely on two specific assertions in Plaintiff's Complaint: (1) where Plaintiff states that it seeks "coverage for [ ] losses, damages, and expenses" (ECF No. 1-1, at 18 ¶ 43); and (2) where Plaintiff employs language that it is "entitled to an order enjoining" Defendants from denying insurance coverage. (*Id*. at 17 ¶ 36.) Based on this language, Defendants argue that the "independent claims test," as outlined in *Rarick v. Federated Services, Inc.*, 852 F.3d 223, 229 (3d Cir. 2017), should govern, and since there are "claims" asserted that are "independent" of any claim for declaratory relief, this Court is duty bound to exercise

5

jurisdiction here. The Court disagrees and concludes that from the face of Plaintiff's Complaint, the relief sought is purely declaratory.

Based on a careful consideration of its allegations, Plaintiff's Complaint is not one that is masquerading as "a declaratory judgment to activate discretionary jurisdiction." *Greg Promushkin, P.C. et al. v. Hanover Ins. Grp.*, No. 20-2561, 2020 WL 475498, at *3 (E.D. Pa. Aug. 14, 2020) (citing *Reifer*, 751 F.3d at 137); *see also Dianoia's Eatery, LLC, d/b/a Dianoia's & Pizzeria Da Vide v. Motorists Mut. Ins. Co.*, No. 20-787, 2020 WL 5051459, at *2 (W.D. Pa. Aug. 27, 2020) (holding that the plaintiff's "single-count declaratory judgment action simply does not state a breach of contract action against [the defendant] seeking damages").

The Complaint's mentions of injunctive relief as well as Plaintiff's losses and damages are not enough to assert claims for distinct relief sufficiently independent of the declaratory relief Plaintiff seeks. (ECF No. 1-1, at 17–18 ¶¶ 36, 43.) Rather, these requests for relief, as they are each pled, each hinge on and would flow from the requested declaration of coverage, and thus, as the Third Circuit held in *Rarik*, this Court retains "discretion to decline jurisdiction of the entire action." *Rarick,* 852 F.3d at 229. The long and the very short of it is that there are no independent money damage or equitable claims asserted, only a request that this Court implement a declaration of coverage by either requiring Defendants to act in accord with such a declaration, or to refrain from taking actions contrary to such a declaration. The relief sought is declaratory relief, with requests that such a declaration have some practical heft to it. Those requests for such relief are not at all "independent" but are wholly the product of the declaratory relief sought. *Rarick* does not direct that this Court retain jurisdiction over this case.

Next, the Court agrees with Defendants that there is no parallel pending state court action as defined in *Kelly*, 868 F.3d at 282, and therefore, the Court continues to the next step by analyzing

whether to exercise its subject matter jurisdiction applying the *Reifer* factors. As detailed below, the Court declines to exercise its jurisdiction in this case, concluding that the first, third, fifth, and sixth *Reifer* factors counsel in favor of remanding this action to state court. The Court will address these factors in turn.[2]

### A. Factor One (1): Whether a Declaration in Federal Court Will Resolve Uncertainty

The first *Reifer* factor addresses whether a declaration in federal court will resolve the uncertainty giving rise to the present controversy. In this case, state rather than federal law will provide the rules of decision. So, this Court's job will be to predict what legal rules the Pennsylvania Supreme Court would announce, and then apply them as though this Court was a state trial court. *See Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) ("The District Court, exercising diversity jurisdiction in [a] declaratory judgment action, was obliged to apply the substantive law of Pennsylvania." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938)). While there is no doubt that a declaration from this Court would provide the parties with a resolution to their present dispute, a state court could just as effectively resolve it. "[A] decision

---

[2] The Court agrees with Defendants' analysis under *Reifer* factors two (2), seven (7), and eight (8) (ECF No. 12, at 9–12). Under *Reifer* factor two (2), Defendants note that adjudication in this Court "presents no greater inconvenience to the parties than litigation in Lawrence County," and considering the domicile of both parties, the Court agrees. (*Id*. at 10.) Under factor seven (7), the Court also agrees with Defendants' analysis that "there is no race to *res judicata*" presented here. (*Id*.) Finally, under factor eight (8), Defendants contend, and this Court agrees, that consideration of this factor "is not germane as it relates to coverage actions involving third party actions." (*Id*.) However, the Court finds that the significance of *Reifer* factors three (3), four (4), five (5), and six (6), as explained in more detail in this Opinion, weigh in favor of remand. *See Reifer*, 751 F.3d at 146 ("The fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" (quoting *Summy*, 234 F.3d at 135–36)); *Ewart*, 257 F. Supp. 3d at 725 (holding that the fifth, sixth, and eighth *Reifer* factors are particularly relevant in insurance cases); *Allstate Ins. Co. v. Antoine*, No. 11-5830, 2012 WL 707069, at *4–*5 (E.D. Pa. Mar. 6, 2020) (explaining that even common insurance contract questions present an important matter of public interest). Recent decisions of our sister courts in this Circuit, each remanding COVID-19 business interruption insurance litigation, also persuasively guide this Court's analysis of the *Reifer* factors. *Dianoia's Eatery, LLC, d/b/a Dianoia's & Pizzeria Da Vide v. Motorists Mut. Ins. Co.*, No. 20-787, 2020 WL 5051459, at *2 (W.D. Pa. Aug. 27, 2020); *Greg Promushkin, P.C. et al. v. Hanover Ins. Grp.*, No. 20-2561, 2020 WL 475498, at *3 (E.D. Pa. Aug. 14, 2020); *Umami Pittsburgh, LLC d/b/a Umami v. Motorists Commercial Mut. Ins. Co.*, No. 20-2561, slip op. at 4 (W.D. Pa. Aug. 14, 2020). Moreover, no one factor laid out by the Third Circuit in *Reifer* is dispositive. *Reifer*, 751 F.3d at 139 (making clear that the list of factors "was non-exhaustive").

here will not provide certainty in similar cases because the Pennsylvania courts" have yet to develop "the contours" of insurance coverage and exclusion disputes arising from the impacts of the COVID-19 pandemic. *Ewart.*, 257 F. Supp. 3d at 725; *see also Umami Pittsburgh, LLC d/b/a Umami*, slip op. at 4 (W.D. Pa. Aug. 14, 2020) ("Because such issues have not been addressed by the Commonwealth's highest court, any declaration by this Court as to the parties' rights under the insurance policy would be predicting how Pennsylvania courts would decide the COVID-19 coverage issues[.]").

## B. Factor Three (3): The Public Interest in Settlement of the Uncertainty of the Obligation

Under the third *Reifer* factor, a lower federal court should consider the public's interest in resolving the uncertainty of obligations giving rise to the parties' dispute. As a general matter, the Third Circuit has held that "federal courts should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state law." *Atlantic Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 174 (3d Cir. 2003) (citing *Summy*, 234 F.3d at 134–35). When a state court, "which has more familiarity with the underlying cases, can equally decide" the insurance coverage or exclusion issue, the public interest is not "better served by the federal court deciding the issue[.]" *Allstate Fire & Cas. Ins. Co. v. Archer*, No. 17-331, 2018 WL 2538859, at *4 (W.D. Pa. June 4, 2018) (quoting *Burke-Dive v Gov't Emps. Ins. Cos.*, No. 17-3198, 2017 WL 3485873, at *4 (E.D. Pa. Aug. 15, 2017)); *see also Ford Motor Co. v. Ins. Comm'r of Commonwealth of Pennsylvania*, 874 F.2d 926, 933 n.10 (3d Cir. 1989) (recognizing "the state's significant interest in the regulation of its insurance industry" in the Circuit's review of a Pennsylvania insurance statute's constitutionality).

While Defendants propose that "Plaintiff has not identified the novelty of the state law issue to be decided," the Court is unpersuaded that no novel question of state law is presented here.[3] (ECF No. 12, at 6–7 ¶¶ 17, 19.) General principles of insurance contract interpretation in Pennsylvania may provide tools for the Court to address insurance disputes; however, those tools, as applied to the scenario presently before the Court, are of limited utility in light of the recency of the COVID-19 pandemic and its intersection with insurance coverage issues governed by Pennsylvania state law. For example, questions such as whether an insurance contract's concurrent cause provision's interaction with the language of a virus exclusion is ambiguous as applied; whether concurrent cause language in an insurance contract is unenforceable as matter of public policy; whether a government stay-at-home order constitutes a "direct or indirect" cause related to the application of a virus exclusion, and so on, are inquiries that strike the Court as "circumstance-specific determinations" that would be made with "relatively undetermined state law" and implications of important state public policy.[4] *Archer*, 2018 WL 2538859, at *4 (quoting *Burke-Dice*, 2017 WL 3485873, at *4); *see also Allstate Ins. Co. v. Antoine*, No. 11-5830, 2012 WL

---

[3] Although not raised in the briefing on Plaintiff's Motion to Remand, the parties, and particularly Defendants in their Motion to Dismiss briefing (ECF No. 18), point to a few instances where "concurrent cause" language in an insurance contract was enforced in decisions of Pennsylvania appellate courts. Defendants thus suggest that these cases provide sufficient settled guidance for this Court such that it would not be merely predicting how a state court might rule. (*Id*. at 5–6.) The cases offered by Defendants, however, are federal court cases applying Pennsylvania law in water or flood exclusion contexts, which is a body of case law far more developed than the situation presented here. (*Id*.) Moreover, the Court, in reviewing these cases, does not find there to be guiding tools of interpretation for the novel interaction between a virus exclusion and concurrent cause language in Pennsylvania appellate decisions. Those are new circumstances. *See Reifer*, 751 F.3d at 146 (standing for the proposition that courts should seriously consider when they might be merely predicting how a state trial court might rule).

[4] Defendants argue that this dispute does not "involve matters of important regulatory concern or an action interfering with important state policy." (ECF No. 12, at 11.) The Court disagrees because it has consistently been held that insurance disputes are deeply intertwined with the public interest. *Ford Motor Co. v. Ins. Comm'r of Commonwealth of Pennsylvania*, 874 F.2d 926, 933 n.10 (3d Cir. 1989); *Allstate Ins. Co. v. Antoine*, No. 11-5830, 2012 WL 707069, at *4–*5 (E.D. Pa. Mar. 6, 2020). Moreover, the cases Defendants cite to for this proposition are distinguishable from the case at hand: one case addressed an insured's rights to collect from an insolvent insurer in the context of abstention, *see Grode v. Mut. Fire Marine & Inland Ins. Co.*, 8 F.3d 953, 959 (3d Cir. 1993); and another, applying New York law, analyzed an insurer's allegedly deceptive acts, *see Plavin v. Group Health, Inc.*, 323 F. Supp. 3d 684, 696 (M.D. Pa. 2018).

707069, at *4–*5 (E.D. Pa. Mar. 6, 2020) (concluding that an action, even as common as an insurance dispute arising from the "issue of permissive use of a vehicle," is a matter of public interest that "would be better served by allowing the state court to decide an issue of state law").

While it is undeniable that the COVID-19 pandemic presents a complex and novel factual situation, the resulting legal disputes are deeply tied to Pennsylvania public policy, as well as the intricacies of Pennsylvania insurance contract interpretation, such that the Court believes it is most appropriate to "step back" in this instance. *Reifer*, 751 F.3d at 146 (quoting *Summy*, 234 F.3d at 135–36). Additionally, as Plaintiff notes in its Motion to Remand, the Supreme Court of Pennsylvania recently denied a King's Bench petition to consolidate COVID-19 business interruption litigation in favor of the development of the applicable legal principles in the state trial courts and then as applicable in the state intermediate appellate courts. (ECF No. 9, at 5.) Based on the uncertain status of currently nascent COVID-19 business interruption litigation in Pennsylvania and the concern for "circumstance-specific determinations" without a clear body of settled state case law, the Court concludes that Pennsylvania bears a significant public interest in resolving the uncertainty of the obligations presented in its own courts. Accordingly, *Reifer* factor three (3) weighs heavily in favor of this Court's declining jurisdiction.

### C. Factor Five (5): A General Policy of Restraint When the Same Issues Are Pending in State Court and Factor Six (6): Avoidance of Duplicative Litigation

Under factor five (5), the Court gives "serious consideration," *see Reifer*, 751 F.3d at 148, to the fact that interpretation of these insurance provisions "are currently pending" in Pennsylvania trial courts. *Antoine*, 2012 WL 707069, at *4–*5; *Diaonia*, 2020 WL 5051459, at *3 (explaining that "a high volume of these types of insurance coverage cases have been brought by policy holders and insurance companies in state and federal courts across the country . . . [, but] there is not yet a body of caselaw developed by Pennsylvania court"). Where a Pennsylvania

court is anticipated to reach a decision that will "undoubtedly affect resolution of this case," factor five (5) counsels in favor of remand. *See Archer*, 2018 WL 2538859, at *5 (holding that where the status of the law is "fluid and unsettled"—here, with respect to stacked coverage waivers—and when an "anticipated decision . . . would undoubtedly affect the resolution of this case," *Reifer* factor five (5) weighed in favor of declining jurisdiction). Moreover, by declining to exercise jurisdiction, "this Court will leave the matter to be decided by a state court and avoid the potential for duplicative litigation," as encouraged by factor six (6). *Antoine*, 2012 WL 707069, at *4–*5; *see* Covid *Coverage Litigation Tracker*, Ins. L. Analytics (U. PENN. CAREY L. SCH.), cclt.law.upenn.edu/cclt-case-list (last visited September 23, 2020) (tracking at least thirty-five (35) COVID-19 business interruption insurance litigation currently in Pennsylvania state courts, but noting that the Covid Coverage Litigation Tracker's identification of state court cases is incomplete). Accordingly, factors five (5) and six (6) support remand.

## IV.     CONCLUSION

To conclude, the first, third, fifth, and sixth *Reifer* factors weigh significantly in favor of this Court declining to exercise its jurisdiction under the DJA and are not counterbalanced by the other *Reifer* factors. For the reasons set out above, the Court **GRANTS** Plaintiff's Motion to Remand (ECF No. 8) and hereby remands this matter to the Court of Common Pleas of Lawrence County, forthwith. In light of the Court's decision to remand this case to state court, Defendants' Motion to Dismiss (ECF No. 4) is further **DENIED WITHOUT PREJUDICE AS MOOT**.

s/ Mark R. Hornak_____
Mark R. Hornak
Chief United States District Judge

cc:     All counsel of record